685 So.2d 990 (1997)
Dines C. DAS, etc., et al., Appellants,
v.
OSCEOLA COUNTY, etc., et al., Appellees.
No. 96-581.
District Court of Appeal of Florida, Fifth District.
January 3, 1997.
*991 Raymond B. Vickers and William A. Friedlander, Tallahassee; and John K. Folsom, Tallahassee, for Appellants.
John R. Herin, Jr., Assistant County Attorney, Kissimmee, for Appellee Osceola County.
Gordon H. Harris and Kent L. Hipp and G. Robertson Dilg of Gray, Harris & Robinson, P.A., Orlando, for Appellee Central Florida Pipeline Corporation.
Herbert W.A. Thiele, County Attorney, Board of County Commissioners of Leon County, Tallahassee, Amicus Curiae, for Florida Association of County Attorneys.
GOSHORN, Judge.
Dines C. Das, Jacob Green, and Pi Ju Tang, as successor trustees of a land trust agreement [hereinafter Trustees], appeal the order dismissing their crossclaim against Osceola County with prejudice. Trustees argue, inter alia, that the court erred in ruling that it lacked subject matter jurisdiction to hear their crossclaim, which sought a writ of mandamus against Osceola County. Because we agree on this point, the other issues raised are moot.
Central Florida Pipeline Corporation [hereinafter CFP] filed a petition in eminent domain on July 12, 1995, seeking to acquire a permanent easement over Trustees' property in order to construct and operate a liquefied petroleum pipeline.[1] Trustees did not want CFP's pipeline on their property and took a *992 number of steps to prevent CFP's success, including filing a crossclaim against Osceola County asserting that Osceola County had failed to properly follow its Comprehensive Plan in permitting CFP's development. Specifically, Trustees sought a writ of mandamus "to compel Osceola to enforce its comprehensive plan." Trustees alleged that the pipeline is a "development" subject to the Comprehensive Plan and that Osceola County had refused to enforce the Plan against CFP. Trustees asserted that the pipeline is inconsistent with the Plan and that "[u]nless the pipeline is brought in conformance with the Osceola County Comprehensive Plan, and unless CFP receives a valid development order[2] from Osceola, CFP's taking of Trustees' property would be unlawful." (Footnote added). Finally, Trustees contended that they had no other adequate remedy against Osceola County in that an action under section 163.3215 "is the only proceeding for challenging a development order or permit, but Osceola's refusal to apply its comprehensive plan has resulted in there being no order to challenge."
On August 22, 1995, the trial court entered an order of taking in favor of CFP. CFP deposited a good faith estimate of value and took possession of a perpetual pipeline easement.[3] That same date, Osceola County filed its motion to dismiss Trustees' crossclaim. Osceola County alleged, among other things, that the crossclaim was time-barred because, pursuant to section 163.3215, the sole mechanism for challenging the consistency of a development order with a comprehensive plan is the filing of a verified complaint no later than thirty days after the alleged inconsistent action has taken place. Because the challenge was not made within that time frame, Osceola County concluded, the court lacked subject matter jurisdiction to hear the crossclaim.
On February 5, 1996, the court dismissed Trustees' crossclaim with prejudice. The court found that it was without subject matter jurisdiction to hear the case, stating, "The sole method to contest [an] alleged inconsistency of Petitioner's Pipeline Project with the Osceola County Comprehensive Plan is through the filing of a verified complaint pursuant to Fla.Stat. § 163.3215."
Section 163.3215, "Standing to enforce local comprehensive plans through development orders," provides in pertinent part:
(1) Any aggrieved or adversely affected party may maintain an action for injunctive or other relief against any local government to prevent such local government from taking any action on a development order, as defined in s. 163.3164, which materially alters the use or density or intensity of use on a particular piece of property that is not consistent with the comprehensive plan adopted under this part.
* * * * * *
(3)(b) Suit under this section shall be the sole action available to challenge the consistency of a development order with a comprehensive plan adopted under this part.
(4) As a condition precedent to the institution of an action pursuant to this section, the complaining party shall first file a verified complaint with the local government whose actions are complained of setting forth the facts upon which the complaint is based and the relief sought by the complaining party. The verified complaint shall be filed no later than 30 days after the alleged inconsistent action has been taken. The local government receiving the complaint shall respond within 30 days after receipt of the complaint. Thereafter, the complaining party may institute the action authorized in this section. However, *993 the action shall be instituted no later than 30 days after the expiration of the 30-day period which the local government has to take appropriate action. Failure to comply with this subsection shall not bar an action for a temporary restraining order to prevent immediate and irreparable harm from the actions complained of.
(Emphasis added).
Contrary to the trial court's finding, the gravamen of Trustees' claim is that Osceola County has not carried out its duty to conduct a public consistency review of the pipeline project and issue a valid development order granting or denying CFP permission to construct the pipeline. Trustees' petition for mandamus was an attempt to force Osceola County to conduct such a review, complete with public notice and hearings, and issue a formal order upon reaching a conclusion. Only after Osceola County has performed as it must can the Trustees, as "adversely affected parties," proceed under the provisions of section 163.3215 to bring a consistency challenge. Until Osceola County issues its determination, Trustees are not within the purview of section 163.3215.
We reject Osceola County's argument that either the tree removal permit it granted CFP pertaining to trees on Trustees' land or a certain letter from Osceola County to CFP stating that the pipeline was exempt from the Comprehensive Plan was the development order. The tree removal permit cannot be deemed a development order allowing the construction of a pipeline because it dealt only with the removal of trees and gave no notice that the consistency of a pipeline with the Comprehensive Plan was being considered and approved. The letter cannot suffice as a development order either, because it was issued solely to CFP without public notice. Trustees' time to protest the pipeline cannot be calculated from the date of a letter which it never received.
Osceola County argues alternatively that no development order was needed and that Trustees' suit was time-barred regardless of any development order. It cites Board of Trustees of Internal Improvement Trust Fund v. Seminole County Board of County Commissioners, 623 So.2d 593 (Fla. 5th DCA 1993), review denied, 634 So.2d 622 (Fla.1994) wherein this court determined that suit should have been filed within 30 days of the county's approval of a rezoning application, which approval was determined to be the "alleged inconsistent action," rather than within 30 days of the subsequently entered development order. Osceola County states that likewise Trustees challenge Osceola County's determination that there were no provisions in the Comprehensive Plan that would prohibit CFP from placing its pipeline over Trustees' property and such challenge should have come within 30 days of that determination, regardless of the subsequent issuance, or not, of any development order.
Osceola County does not explain how Trustees were to have learned of Osceola County's "alleged inconsistent action," i.e., its determination that the pipeline was not prohibited by the Comprehensive Plan. Trustees had no notice of any such determination and would only have gained that notice upon receipt of a development order, barring receipt of earlier notification of Osceola County's determination.
Osceola County further contends that no notice was required because the consistency determination alone did not deprive Trustees of a property interest. It was merely a finding that the particular development was consistent with the language of the Comprehensive Plan. In accordance with that determination, CFP sought to acquire the necessary easement interests via eminent domain. The forum for objecting to CFP's acquisition of an easement was the eminent domain proceeding, of which Trustees were given the requisite notice. Because Trustees failed to timely file a verified complaint pursuant to section 163.3215, the trial court correctly ruled that it lacked subject matter jurisdiction.
This argument may have had merit had Trustees received notice of Osceola County's determination. In that instance, Trustees would have had the opportunity to challenge Osceola County's consistency determination prior to the cause proceeding to the point of the quick-take hearing. However, because Trustees were denied this opportunity due to a lack of notice, we reject Osceola County's contention.
*994 Trustees have had a pipeline placed underground on their property without notice that Osceola County had determined that such placement was consistent with the Comprehensive Plan. Trustees had no way to timely challenge that determination because they were never given notice that Osceola County was considering the consistency of the pipeline with the Comprehensive Plan.
Subsection 163.3181(1) states:
It is the intent of the Legislature that the public participate in the comprehensive planning process to the fullest extent possible. Towards this end, local planning agencies and local governmental units are directed to adopt procedures designed to provide effective public participation in the comprehensive planning process and to provide real property owners with notice of all official actions which will regulate the use of their property. The provisions and procedures required in this act are set out as the minimum requirements towards this end.
(Emphasis added). In order to fulfill the statutory purpose, Osceola County had an obligation to use a procedure designed to provide Trustees, as the affected landowners, notice within 30 days of the governmental action which affected their land. Had they received timely notice that Osceola County had determined that the pipeline was a "consistent use" under the Comprehensive Plan, Trustees could have timely challenged the determination. We acknowledge that a public hearing or public notice would not be needed in every instance, for example, where a homeowner seeks a permit to add an extra room. However, notice is required where a proposed project will affect the property of a party other than the one seeking the permit. A county should, at the least, issue an order or permit of public record before the rights of the public to file a consistency challenge are foreclosed by the expiration of time.
REVERSED and REMANDED for further proceedings.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] CFP owns and operates two petroleum pipelines that run from the Port of Tampa to its tank terminal in Taft. These pipelines transport roughly 90% of the petroleum products used in Central Florida. Based on the increased demand for its product since the 1965 installation of the original pipelines, CFP sought to construct an additional 110 mile long pipeline, with a 2 mile offshoot from the tank terminal to the Orlando International Airport. CFP determined that the most suitable route for the new pipeline would pass along the edge of Trustees' property.
[2] Subsection 163.3164(7) defines "development order" as "any order granting, denying, or granting with conditions an application for a development permit." Subsection (8) defines "development permit" as including "any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance, or any other official action of local government having the effect of permitting the development of land." Section 380.04 defines "development" as "the carrying out of any building activity or mining operation, the making of any material change in the use or appearance of any structure or land, or the dividing of land into three or more parcels."
[3] Construction of the pipeline was completed in April, 1996, and the line became operational.